**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**YO**,

    Petitioner,

v.                                                                                                     Civil Action No. **3:20CV453**

**ALISON LAND**,

    Respondent.

**REPORT AND RECOMMENDATION**

Yo, formerly known as Mario Ballard (*see* ECF No. 12–1), a Virginia state detainee proceeding *pro se* and *in forma pauperis*, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition") challenging a civil order of the Circuit Court of the City of Newport News ("Circuit Court") recommitting him to the custody of Virginia Center for Behavior Rehabilitation ("VCBR") as a sexually violent predator ("SVP"). (ECF No. 1.) The matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). Respondent moves to dismiss on the grounds that Yo's claims are procedurally defaulted and otherwise lack merit. (ECF No. 10, 12.) Yo filed a response. (ECF No. 14.) For the reasons stated below, it is RECOMMENDED that the Court GRANT the Motion to Dismiss (ECF No. 10), DISMISS Yo's claims as procedurally defaulted, and DENY the § 2254 Petition (ECF No. 1).

**A. Procedural History**

On June 12, 2007, after Yo was convicted of rape, the Circuit Court civilly commit Yo as an SVP pursuant to Section 37.2–900, *et seq*., of the Code of Virginia. (*See* ECF No. 12–2.) Approximately three (3) months after being admitted to the VCBR as an SVP, Yo assaulted another

resident of the VCBR. (ECF No. 12–7, at 32.)[1] Yo was convicted of malicious wounding and sentenced to ten (10) years of incarceration in the Virginia Department of Corrections ("VDOC"). (ECF No. 12–4, at 1–2.) After serving his sentence with the VDOC, Yo returned to the VCBR in March 2018. (ECF No. 12–7, at 32.)

On September 5, 2019, the Circuit Court held a hearing to review Yo's civil commitment, as required by Virginia Code § 37.2–910(B). (ECF No. 12–7.) Yo was represented by counsel. (*Id*. at 6.) At the outset of the hearing, Yo indicated that he was not satisfied with his attorney and that he wished to represent himself. (*Id*. at 6–7.) The Circuit Court admonished Yo to reconsider his decision and warned him that if he represented himself, he did so "at [his] own peril." (*Id*. at 7.) Yo reiterated that he did not want an attorney and that he wished to represent himself. (*Id*. at 9.) The Circuit Court reminded Yo that he was there for a "serious hearing," and that individuals in his situation usually have an attorney. (*Id*. at 12.) Emphasizing this point, the Circuit Court said that it had "never had a [civil commitment] case . . . [in which] the defendant or the respondent was not represented by an attorney." (*Id*. at 11–12.) The Circuit Court told Yo that he had "a constitutional right to have an attorney," and reiterated its willingness provide him with new counsel. (*Id.* at 12.) The Circuit Court expressly told Yo that it was not "a good idea" for him to proceed *pro se*. (*Id.* at 13.) Nevertheless, Yo insisted on proceeding *pro se*, and after conducting *voir dire*, the Court determined that Yo knowingly and voluntarily waived his right to counsel. (*Id*. at 15.)

The Commonwealth called one witness, Mario Dennis, Ph.D. ("Dr. Dennis"), to testify. (*Id*. at 5.) Dr. Dennis explained that Yo had been diagnosed with antisocial personality disorder

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the spelling, spacing, capitalization, and punctuation in the quotations from Yo's submissions.

(*id*. at 28–29), other specified paraphilic disorder, non–consent (*id*. at 33), and various substance abuse disorders (*id*. at 36). Dr. Dennis testified that Yo "still does meet the definition of a sexually violent predator." (*Id*. at 52.) Dr. Dennis opined that despite making some progress in his treatment, Yo still "require[d] continued inpatient treatment" to complete his program. (*Id*. at 50–51.) Further, Dr. Dennis said that Yo would not be suitable for outpatient treatment because outpatient treatment was geared towards low and moderate risk offenders, and Yo was still at a high risk to "sexually reoffend." (*Id*. at 51.) Dr. Dennis testified that if Yo were released, he would likely not be able to comply with supervision, and he would pose an undue risk to public safety. (*Id*. at 51–52.) The Commonwealth also introduced Dr. Dennis's report, various treatment records, and the report of Craig King, Ph.D. ("Dr. King.") (*See* ECF No. 12–7, at 5.)

Yo called one witness on his behalf, Dr. King, who submitted an independent evaluation of Yo. (ECF No. 12–7, at 5.) Yo appeared unsatisfied with Dr. King's report. Among other things, Yo asked Dr. King if he "copy and paste[d]" Dr. Dennis's report into his own. (*Id*. at 81.) Dr. King maintained that his report contained his own original thoughts based on the records that were provided to him. (*Id*. at 81–82.) Yo also inquired as to whether Dr. King believed that he gave Yo "a fair assessment and diagnosis." (*Id*. at 82.) Dr. King stated that he believed his assessment of Yo was fair. (*Id*. at 83.)

The Circuit Court heard arguments from both parties. (*Id*. at 85–88.) The Circuit Court then ruled that that Yo "still remain[ed] a sexually violent predator." (*Id*. at 88.) The Circuit Court further determined that Yo needed secure inpatient treatment, and that outpatient treatment "would not be sufficient to provide the appropriate degree of community safety until [Yo] completed the VCBR program." (*Id*. at 90–91.)

The Circuit Court informed Yo that he had a right to appeal and inquired whether Yo would like to have counsel appointed to assist with his appeal. (*Id*. at 91.) Yo indicated that he would like an attorney for his appeal. (*Id*.) The Court appointed a new attorney to represent Yo on appeal. (*Id*.)

Yo appealed the Circuit Court's recommitment order to the Supreme Court of Virginia. (ECF No. 12–8.) On appeal, Yo, through counsel, raised one assignment of error:

> The trial court erred in finding Yo remained a sexually violent predator, where the evidence adduced at the hearing showed that Yo had been of good behavior, had nearly perfect attendance in his groups, and otherwise demonstrated an ability to control his behavior and conform to societal norms such that he is no longer likely to engage in sexually violent acts.

(*Id.* at 7.) On May 13, 2020, the Supreme Court of Virginia, finding no reversible error, refused Yo's petition for appeal. (ECF No. 12–9, at 1.)

On June 17, 2020, the Court received Yo's § 2254 Petition (ECF No. 1), in which Yo raises two issues:

> Claim One: "Due Process of Law, Cruel and Unusual Punishment, [and] Slavery Abolish Clause violation under the U.S. Const[itution]. On September 5, 2019, Dr. Dennis testified falsely against the Plaintiff in order to maintain custody of the Plaintiff. He stated that the Plaintiff remained a SVP, among other things. Plaintiff is of sound mind and has not been accused, charged, or convicted of any sexual incident since 1994." (*Id.* at 4.)
>
> Claim Two: "Due Process of Law, Cruel and Unusual Punishment, [and] Slavery Abolish Clause violation under the U.S. Const[itution]. On September 5, 2019, Dr. King testified falsely against the Plaintiff in order to maintain custody of the Plaintiff for the Commissioner. He stated that Plaintiff remained a SVP, among other things. The Plaintiff has a clear right to be assisted in his defense by his expert witness, however, Dr. King stated he would be objective in his opining for the Plaintiff, while on the witness stand, Dr. King failed in his duties, morally as well as ethically, to the Plaintiff." (*Id*.)

As discussed below, Claims One and Two were not raised in the state courts and are barred from review here.

### B. Procedural Default

Before a state prisoner can bring a § 2254 petition in federal district court, the prisoner must first have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State exhaustion "is rooted in considerations of federal-state comity," and in Congressional determination via federal habeas laws "that exhaustion of adequate state remedies will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D. Va. 2005) (some internal quotation marks omitted) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 491–92, 492 n.10 (1973)). The purpose of exhaustion is "to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal quotation marks omitted).

Exhaustion has two aspects. First, a petitioner must utilize all available state remedies before the petitioner can apply for federal habeas relief. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844–48 (1999). As to whether a petitioner has used all available state remedies, the statute notes that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state courts an adequate "opportunity" to address the constitutional claims advanced on federal habeas. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks omitted) (quoting *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995)). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* Fair presentation demands that a petitioner present "both the operative facts and the controlling

legal principles" to the state court. *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks omitted) (quoting *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)). The burden of proving that a claim has been exhausted in accordance with a "state's chosen procedural scheme" lies with the petitioner. *Mallory v. Smith*, 27 F.3d 991, 994–95 (4th Cir. 1994).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)). A federal habeas petitioner also procedurally defaults claims when he or she "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (quoting *Coleman*, 501 U.S. at 735 n.1).[2]

The burden of proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citations omitted). Once such a showing is made, this Court cannot review the merits of a defaulted claim absent a showing of "cause for the default and actual prejudice as a result of the alleged violation of federal law," or a showing that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *see Harris v. Reed*, 489 U.S. 255, 262 (1989).

---

[2] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Hedrick v. True*, 443 F.3d 342, 364 (4th Cir. 2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996)).

To exhaust his claims, Yo was required to properly present them to the Supreme Court of Virginia prior to filing his § 2254 Petition. This was clearly not done. Consequently, the Supreme Court of Virginia was denied a fair and meaningful "opportunity" to address the two new claims, which Yo currently seeks to advance. *Baldwin*, 541 U.S. at 29.

If Yo now attempted to present Claims One and Two to the state courts in a state habeas petition, they would be barred, *inter alia*, pursuant to the rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974), because Yo could have raised, but failed to raise, these issues on direct appeal. *Slayton* constitutes an adequate and independent procedural rule when so applied. *See Clagett v. Angelone*, 209 F.3d 370, 379 (4th Cir. 2000); *Mu'Min v. Pruett*, 125 F.3d 192, 196–97 (4th Cir. 1997); *Britt v. Stewart*, No. 3–12CV20–HEH, 2014 WL 546064, at *3 (E.D. Va. Feb. 7, 2014) ("Virginia courts have regularly and consistently applied *Slayton* to bar claims that could have been, but were not, raised on direct appeal in civil commitment proceedings."). Accordingly, Claims One and Two are procedurally defaulted.

Thus, the question becomes whether Yo has shown "cause for the default and actual prejudice," or that "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Harris*, 489 U.S. at 262. This Court may not consider Yo's claim if he fails to make such a showing.

Yo posits that his default should be excused "due to him having to represent himself at his annual review hearing." (ECF No. 14, at 2.) Yo further states that his legal skills were "inadequate" because he "is not a professional member of the bar." (*Id*.) Yo's arguments fail for a number of reasons. First, Yo's position is based on a faulty factual premise. Simply put, Yo did not have to represent himself at his annual review hearing. At the beginning of the hearing, Yo had an attorney representing him. Yo insisted on discharging that attorney and proceeding ahead

7

*pro se*, despite the unequivocal and repeated warnings of the Circuit Court that it was not a good idea for him to proceed *pro se* (ECF No. 12–7, at 13), and despite the Circuit Court's offer to appoint him a new attorney (*id*. at 12). For this reason alone, Yo's argument fails.

Moreover, any error raised by Yo is entirely of his own making. *Accord Braxton v. McDonough*, No. 8:03–CV–2337–T–27TGW, 2007 WL 1017675, at *9–10 (M.D. Fla. Mar. 30, 2007) (denying habeas relief where petitioner insisted on discharging his court–appointed attorney and proceeding to trial *pro se* because, *inter alia*, "errors invited by a [party] are not a basis for relief"). A litigant generally "cannot complain of error which he himself has invited." *United States v. Herrera*, 23 F.3d 74, 75 (4th Cir. 1994) (quoting *Shields v. United States*, 273 U.S. 583, 586 (1927)). Indeed, "a court can not be asked by [a party] to take a step in a case and later be convicted of error [at the urging of that party], because it has complied with such request." *Id*. (citation omitted). "[N]o exception to the invited error doctrine has ever been adopted by [the United States Court of Appeals for the Fourth Circuit]." *Id*. (first alteration in original) (citation omitted). Yo has failed to demonstrate that an exception to the invited error doctrine applies, and the Court cannot discern a reason why it should break new ground under these circumstances.

Even if that were not the case, Yo's after–the–fact realization that his legal skills were "inadequate" is unavailing. It is well settled that a litigant "who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) (holding that a defendant in a criminal trial has a right to proceed *pro se* when he knowingly and voluntarily elects to do so, and the court cannot force a lawyer upon him). Thus, the quality of representation that Yo provided for himself is ultimately irrelevant to the issue of default.

8

Yo also claims that he is "actually innocent of being an SVP." (ECF No. 14, at 2.) However, this argument is also deficient, as Yo has failed to point to any specific facts to substantiate his position. *See Bousley v. United States*, 523 U.S. 614, 623–24 (1998) (citation omitted) (noting that to establish actual innocence a petitioner must demonstrate "factual innocence, not mere legal insufficiency"); *United States v. Mikalajunas*, 186 F.3d 490, 494 (4th Cir. 1992) (indicating that a petitioner must establish "actual factual innocence"). While Yo generally avers in Claims One and Two that Dr. Dennis and Dr. King "testified falsely" against him "in order to maintain custody of [him]," he fails to articulate specifically how their testimony was false. More importantly, Yo fails to point to any specific facts, as opposed to his own opinion, which demonstrate that he is not a SVP. *Dudgeon v. Richards*, No. C09–5299 FDB, 2010 WL 417419, at *18 (W.D. Wash. Jan. 29, 2010) (rejecting petitioner's assertion of actual innocence in SVP civil commitment proceeding where the petitioner argued evidence against him was false, but did "not provide any newly–presented reliable evidence to support his claim of actual innocence.").

Given Yo's failure to establish cause and prejudice, or that a fundamental miscarriage of justice would occur if this Court declined to consider his procedurally defaulted claims, it is RECOMMENDED that Claims One and Two be DISMISSED as procedurally defaulted.[3]

**C. Conclusion**

For the reasons stated above, it is RECOMMENDED that Respondent's Motion to Dismiss (ECF No. 10) be GRANTED, Yo's claims be DISMISSED, the § 2254 Petition (ECF No. 1) be

---

[3] In the alternative, as Respondent correctly notes (*see* ECF No. 12, at 7), Claims One and Two are unsupported and conclusory and fail to demonstrate that Yo is entitled to federal habeas relief. *See Sanders v. United States,* 373 U.S. 1, 19 (1963) (denying habeas relief where petitioner "stated only bald legal conclusions").

9

DENIED, and the action be DISMISSED. It is further RECOMMENDED that the Court DENY a certificate of appealability.[4]

Yo is advised that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Such objections should be numbered and identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. *See* Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation may result in the dismissal of his claims, and it may also preclude further review or appeal from such judgment. *See Carr v. Hutto*, 737 F.2d 433, 434 (4th Cir. 1984).

The Clerk is DIRECTED to send a copy of this Report and Recommendation to Yo and counsel for Respondent.

It is so ORDERED.

/s/
Elizabeth W. Hanes
United States Magistrate Judge

Date: July 23, 2021
Richmond, Virginia

---

[4] An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893–94 (1983)). Yo fails to meet this standard.